**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| UBS GROUP AG, *as successor-in-interest to* CREDIT SUISSE GROUP AG,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>ADAM GISHEN,<br><br>　　　　　Respondent. | C.A. No. _____ |

## UBS GROUP AG'S PETITION TO CONFIRM ARBITRAL AWARD

Petitioner UBS Group AG, as successor-in-interest to Credit Suisse Group AG ("Petitioner" or "UBS"), respectfully petitions this Court, pursuant to Section 207 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 207, for an order confirming, recognizing, and enforcing the Final Award dated May 29, 2026 (the "Award") in the arbitration against Respondent Adam Gishen, International Chamber of Commerce Case No. 29547/ICA9.

In support of this Petition, UBS alleges as follows:

### INTRODUCTION

1. In March 2023, Credit Suisse stood on the brink of collapse. Following two sudden bank failures in the United States, Credit Suisse—one of the world's largest banks—faced imminent insolvency, which in turn threatened to trigger a global financial crisis with especially severe consequences for the Swiss economy. To avoid collapse, Swiss authorities responded with extraordinary measures, including providing hundreds of billions of Swiss francs in public support, and ultimately coordinating the emergency merger of Credit Suisse with its longtime rival, UBS.

2. As an essential part of the rescue efforts, the Swiss government instructed Credit Suisse to write down its Additional Tier 1 instruments ("AT1s") and Contingent Capital Awards

1

("CCAs").  AT1s were publicly traded bonds that were designed to be written down in the event of a crisis, while CCAs were a form of deferred compensation for senior bank executives that were modeled closely on the AT1s.

3.    On March 19 and 22, Switzerland's Financial Market Supervisory Authority ("FINMA") issued Decrees requiring Credit Suisse to write down the AT1s and CCAs (the "Decrees").  Those Decrees carry the force of law and remain binding today.

4.    Gishen is a former Credit Suisse executive who was awarded CCAs.  After he was informed that a CCA awarded in 2020 was written down pursuant to the Swiss government's binding Decrees, he initiated arbitration to compel UBS to pay it.

5.    The arbitrator correctly denied Gishen's claim for payment of the CCA, determining that FINMA's binding Decrees made UBS's performance legally impossible.  He also ordered Gishen to pay UBS $377,269.91 for attorneys' fees and costs it incurred to defend Gishen's claim.

6.    Gishen has not paid UBS the fees and costs that the arbitrator awarded. Accordingly, UBS now petitions for confirmation, recognition, and enforcement of the Award.

## THE PARTIES

7.    Petitioner UBS Group AG is a publicly traded corporation organized under the laws of Switzerland with its principal place of business at Bahnhofstrasse 45 in Zurich, Switzerland. Ex. 1, Award ¶ 11.[1]  UBS is successor-in-interest to Credit Suisse Group AG.

---

[1] All exhibits cited in this Petition are attached to the Declaration of Andrew G.I. Kilberg ("Kilberg Decl."), which is being filed concurrently.

8.     Respondent Adam Gishen is a citizen of the United Kingdom who is domiciled in London, England.  Award ¶ 10.  Gishen is the former Head of Investor Relations, Corporate Communications, Marketing, and Branding at Credit Suisse.

## JURISDICTION AND VENUE

9.     This Petition falls under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (the "New York Convention"), 21 U.S.T. 2517, T.I.A.S. No. 6997, 330 U.N.T.S. 38, and Chapter 2 of the Federal Arbitration Act, 9 U.S.C. §§ 201-208, because the Award resolves a commercial dispute that is not entirely between citizens of the United States.  *See* 9 U.S.C. § 202; *CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 71 (2d Cir. 2017).

10.     This Court has subject matter jurisdiction over the Petition under 28 U.S.C. § 1331 because an action or proceeding falling under the Convention is deemed to arise under the laws and treaties of the United States.  9 U.S.C. § 203.

11.     This Court has quasi in rem jurisdiction based on Gishen's substantial holdings of a Delaware corporation's shares, warrants, and options.  *See infra* ¶¶ 34-38.  Those property interests are deemed to be located in Delaware.  8 *Del. C.* § 169 ("For all purposes of title, action, attachment, garnishment, and jurisdiction of all courts held in this State, … the situs of the ownership of the capital stock of all corporations existing under the laws of this State, whether organized under this chapter or otherwise, shall be regarded as in this State."); *cf.* 8 *Del. C.* § 324(a) ("The shares of any person in any corporation with all the rights thereto belonging, or any person's option to acquire the shares, or such person's right or interest in the shares, may be attached under this section for debt, or other demands, if such person appears on the books of the corporation to hold or own such shares, option, right or interest.").  As a result, those property interests provide

a jurisdictional basis for this Court to enforce the Award. *See Sociedad Concesionaria Metropolitana de Salud S.A. v. Webuild S.p.A.*, 177 F.4th 231, 249-50 (3d Cir. 2026) ("[A] court can exercise attachment jurisdiction based on the mere presence within the forum of an arbitral-award debtor's property, and the property does not need any relation to the underlying cause of action.").

12.     Venue is proper in this Court because Gishen resides outside of the United States and "a defendant not resident in the United States may be sued in any judicial district." 28 U.S.C. § 1391(c)(3); *see also Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.,* 406 U.S. 706, 714 (1972) (reaffirming the "long-established rule that suits against aliens are wholly outside the operation of all the federal venue laws, general and special").

13.     Venue is also proper in this Court because "a substantial part of property that is the subject of the action is situated" in the district given Gishen's ownership of shares in a Delaware corporation. 28 U.S.C. § 1391(b)(2); *see infra* ¶¶ 34-38.

## RELEVANT FACTS

**I.      The Credit Suisse Crisis and FINMA's Write-Down Orders**

14.     In March 2023, Credit Suisse was on the verge of collapse after years of setbacks that deeply undermined market confidence in the bank. Award ¶ 102.

15.     The Swiss government took extraordinary action to avoid collapse, and assembled a massive rescue package for Credit Suisse over the weekend of March 18-19. Award ¶¶ 102-18.

16.     A critical piece of the government's rescue package involved the write-down of Credit Suisse's AT1s, including the CCAs. FINMA issued a decree on March 19 that "instructed" Credit Suisse "to immediately initiate the complete write-off of the AT1 instruments by notification to the AT1 creditors." Award ¶ 198 (quoting March 19 Decree ¶ 25). After Credit Suisse asked FINMA to reconsider whether the March 19 Decree covered the CCAs, FINMA

issued a second decree on March 22 confirming that the CCAs were "included in the write-off of all AT1 instruments pursuant to the decree of March 19, 2023." Award ¶ 129 (quoting March 22 Decree ¶ 16).

17.     FINMA thus "ordered Credit Suisse to write their [AT1s] down to zero." *Creditincome Ltd. v. Swiss Confederation*, --- F.4th ---, 2026 WL 2050977, at *1 (2d Cir. July 16, 2026).  FINMA's Decrees were "mandatory directives" that reflected Switzerland's "sovereign authority." *Id*. at *4, *6.

18.     Credit Suisse complied with FINMA's binding Decrees and wrote down the AT1s and CCAs to zero, as ordered.  Award ¶ 71(23).

19.     The Swiss government's intervention was successful:  Credit Suisse was kept afloat long enough to finalize the emergency rescue package and the merger with UBS, and the global market averted a broader crisis.  *See* Award ¶ 119.

## II.     The Underlying Dispute

20.     Gishen joined Credit Suisse in 2015.  Award ¶ 91.  During his time at Credit Suisse, he was compensated handsomely.  Gishen's compensation packages included several different forms of variable and deferred awards.  The CCA amounted to approximately 14% of his total compensation in the relevant performance year.  *See id.* ¶ 232.

21.     The CCAs were governed by contracts known as CCA Certificates, which themselves were subject to New York contract law.  *See* Ex. 2, Swiss Franc Series 2020-1 Contingent Capital Award Grant Notice & Certificate § 10(o) ("CCA Certificate").

22.     At issue here is one CCA awarded to Gishen in February 2020.  Award ¶ 71(16); *see* CCA Certificate at 1.

23.    As required by FINMA's Decrees, Credit Suisse wrote down Gishen's CCA in May 2023.  Award ¶ 71(20)-(24).

24.    Gishen initiated arbitration against UBS to force it to pay his CCA notwithstanding FINMA's Decrees.  Award ¶ 28.[2]

### III.    The Arbitration Agreement

25.    The Credit Suisse Group AG Master Share Plan, which is applicable to the CCAs, provides that any dispute under the Plan or any Award Certificate "shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce."  Ex. 3, Credit Suisse Group AG Master Share Plan § 15(j).

26.    The Parties entered a Supplemental Arbitration Agreement specifying that the Parties would submit their dispute to a sole arbitrator under the ICC's Expedited Procedure Rules and that the seat of the arbitration would be London, England.  Ex. 4, Supplemental Arbitration Agreement at 1; Award ¶ 19.  The Parties also agreed that any hearing could be held in New York, New York.  Supplemental Arbitration Agreement at 1; Award ¶ 19.

27.    The Parties thereafter participated in a rank-and-strike procedure for selecting the sole arbitrator.

28.    Following the production of documents and extensive written submissions from the Parties, the arbitrator and the Parties agreed that oral argument would be held in lieu of an evidentiary hearing.  Award ¶¶ 61-62.  Argument was heard in New York, New York, on March 19, 2026.  *Id.* ¶ 63.  Gishen was present and participated by videoconference.  *Id.* ¶ 65.

---

[2] Gishen's arbitration was one of four initiated by former Credit Suisse executives requesting the same relief.  *See* Award ¶ 242.

**IV.    The Award**

29.    The arbitrator issued the Award on May 29, 2026.

30.    The arbitrator refused to force UBS to break the law and therefore denied Gishen's claims, concluding that UBS's performance was legally impossible due to FINMA's binding Decrees.  Award ¶¶ 208, 254.  Specifically, the arbitrator determined that once FINMA issued its March 2023 Decrees ordering Credit Suisse to write down the CCAs, "Credit Suisse, and UBS as Credit Suisse's successor-in-interest, had to act in compliance with them so long as they were in effect under Swiss law."  *Id.* ¶ 208.  The arbitrator explained that "[t]his provides [UBS] with a defense as a matter of New York law for the cancellation of Mr. Gishen's CCAs" because "Swiss law prohibits the payment of the value of the CCA[ ] that [was] awarded to Mr. Gishen."  *Id.* ¶¶ 203-04, 208.  The arbitrator therefore "dismissed" Gishen's "claims and requests for relief" in full.  *Id.* ¶ 254(a).

31.    Pursuant to his discretion under Article 38 of the ICC Rules, the arbitrator also ordered Gishen to pay UBS $377,269.91 for reasonable attorneys' fees and costs incurred in the arbitration.  Award ¶¶ 253-54.

32.    Because the arbitration was seated in London, the English Arbitration Act controls efforts to overturn the Award.  *See* N.Y. Convention, art. V(1)(e); *CBF Industria*, 850 F.3d at 71.  Under the English Arbitration Act, Gishen had 28 days to petition to vacate the Award.  Arbitration Act 1996, c. 23, § 70(3) (Eng.).  Gishen has not filed a vacatur petition, and the statutory deadline passed on June 26, 2026.

33.    Gishen has not paid UBS the fees and costs that the arbitrator awarded.  Kilberg Decl. ¶ 11.

**V.      Respondent's Delaware Property**

34.      Gishen is a director of SunPower Inc. ("SunPower"), a publicly traded Delaware corporation that has registered classes of securities under Section 12(b) of the Securities Exchange Act.  15 U.S.C. § 78*l*(b); *see* Ex. 5, SunPower Inc., Registration Statement at 64 (Form S-1) (July 23, 2026) ("SunPower Registration Statement").

35.      As a result, Gishen must report changes in his beneficial ownership of SunPower securities under Section 16(a) of the Securities Exchange Act.  15 U.S.C. § 78p(a).  Gishen must also generally do so within two business days.  *Id.* § 78p(a)(2)(C).

36.      On July 23, 2026, SunPower reported that Gishen beneficially owned 864,686 shares, including "(i) 174,515 shares of common stock and 110,656 shares of common stock issued or issuable upon settlement of restricted stock units, (ii) 480,000 shares issuable pursuant to warrants exercisable within 60 days of July 16, 2026, and (iii) 99,515 shares issuable pursuant to stock options exercisable within 60 days of July 16, 2026." SunPower Registration Statement at 92 n.12. The last filing that Gishen made pursuant to Section 16(a) of the Securities Exchange Act also disclosed ownership of SunPower securities.  Ex. 6, SunPower Inc., Annual Statement of Changes in Beneficial Ownership at 1 (Form 5) (Feb. 17, 2026).

37.      Since then, neither Gishen nor SunPower has reported a change in Gishen's ownership of SunPower securities, including his shares of common stock.

38.      On information and belief, Gishen continues to own hundreds of thousands of SunPower's shares, warrants, and options.

## LEGAL BACKGROUND

39.      The New York Convention is a treaty governing the recognition and enforcement of international arbitral awards.  The Convention has been ratified by the United States and is

implemented through Chapter 2 of the FAA, which governs the recognition and enforcement of foreign arbitral awards in the United States.  9 U.S.C. § 201.  As relevant here, Chapter 2 applies whenever one of the parties to the award is a foreign citizen, such as an entity (like UBS) that is incorporated and has its principal place of business outside the United States.  *Id.* § 202.

40.     Chapter 2 allows a party to petition "for an order confirming the award as against any other party to the arbitration."  9 U.S.C. § 207.  "The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [New York] Convention."  *Id.*

41.     A petition to confirm the award must be filed "[w]ithin three years after" the award was "made."  9 U.S.C. § 207.

**<u>CLAIM FOR RELIEF</u>**

**COUNT ONE**
**(Confirmation, Recognition, and Enforcement of Arbitral Award)**
**(9 U.S.C. §§ 203, 207; New York Convention)**

42.     Petitioner repeats and realleges each of the foregoing paragraphs.

43.     This Petition is timely under 9 U.S.C. § 207 because it was filed within three years after the Award was made on May 29, 2026.

44.     Through the subject arbitration, Gishen demanded that UBS pay his CCA.

45.     The arbitrator denied Gishen's claims and ruled in UBS's favor, concluding that UBS's performance under the CCA Certificate is legally impossible due to the Swiss government's binding Decrees.  Award ¶¶ 208, 254.

46.     The arbitrator also ordered Gishen to pay UBS $377,269.91 in legal fees and other costs incurred by UBS in the arbitration.  Award ¶¶ 253-54.

47.     Gishen has not paid UBS any portion of the Award.  Kilberg Decl. ¶ 11.

48.     The New York Convention and Chapter 2 of the FAA apply to the Award.  *Supra* ¶¶ 9, 39.

49.     Under Chapter 2 of the FAA, a court "shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award" specified in the New York Convention.  9 U.S.C. § 207.

50.     None of those grounds applies to the Award denying Gishen's claims and awarding UBS legal fees and costs:

a.     The Parties' agreement to arbitrate was "valid."  N.Y. Convention, art. V(1)(a).

b.     Gishen had "proper notice" of the arbitral proceedings and fully participated in those proceedings.  N.Y. Convention, art. V(1)(b).

c.     The dispute over the write-down was "within the terms of the submission to arbitration."  N.Y. Convention, art. V(1)(c).

d.     "The composition of the arbitral authority" and "the arbitral procedure" were "in accordance" with the Supplemental Arbitration Agreement.  N.Y. Convention, art. V(1)(d).

e.     The Award has not been "set aside or suspended."  N.Y. Convention, art. V(1)(e).

f.     The "subject matter" of the Parties' dispute is "capable of settlement by arbitration."  N.Y. Convention, art. V(2)(a).

g.     The arbitrator's exercise of discretion to award UBS legal fees and costs is not "contrary to the public policy" of the United States.  N.Y. Convention, art. V(2)(b).

51.     Because there are no grounds for refusal or deferral of recognition or enforcement of the Award, this Court should confirm the Award, enforce it against Gishen's assets in Delaware, and direct that judgment be entered thereon.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

A.    Confirm the Award pursuant to 9 U.S.C. § 207;

B.    Enforce the Award against Gishen's assets in Delaware;

C.    Enter judgment in favor of UBS and against Gishen consistent with the Award, including applicable post-award interest and post-judgment interest;

D.    Award UBS its taxable costs; and

E.    Grant such other relief as this Court deems just and proper.

|                                      | /s/ Travis S. Hunter                          |
|--------------------------------------|------------------------------------------------|
|                                      | Raymond J. DiCamillo (#3188)                  |
|                                      | Travis S. Hunter (#5350)                      |
| OF COUNSEL:                          | Sara M. Metzler (#6509)                       |
|                                      | RICHARDS, LAYTON & FINGER, P.A.               |
| Eugene Scalia                        | One Rodney Square                             |
| Andrew G.I. Kilberg                  | 920 North King Street                         |
| GIBSON, DUNN & CRUTCHER LLP          | Wilmington, DE 19801                          |
| 1700 M Street, N.W.                  | 302.651.7700                                  |
| Washington, DC  20036                | dicamillo@rlf.com                             |
| 202.955.8500                         | hunter@rlf.com                                |
|                                      | metzler@rlf.com                               |
|                                      |                                                |
|                                      | *Attorneys for Petitioner UBS Group AG*       |
| Dated: August 6, 2026                |                                                |